# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

EQUAN YUNUS
a/k/a DAMON VINCENT,

                              Plaintiff,

        v.                                       9:16-CV-1282
                                                 (GTS/ATB)

DOUGLAS JONES, C.O.,
Great Meadow Correctional Facility, et al,

                              Defendants.

EQUAN YUNUS, Plaintiff pro se
MARK G. MITCHELL, Asst. Attorney General for Defendants.

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation by the Honorable Glenn T. Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c).  In this civil rights complaint, plaintiff alleges that the defendants retaliated against him for filing grievances and assisting other inmates with litigation against correctional officers. (Complaint ("Compl.") at 5) (Dkt. No. 1).  The alleged retaliatory actions include sexual assault, issuance of a false misbehavior report, termination from his job in the prison law library, and an unnecessary drug test and strip-frisk.  (Compl. at 6-20).  Plaintiff seeks substantial monetary relief for the alleged constitutional violations. (Compl. at 14, 17, 20).

Presently before the court is the defendants' motion for partial dismissal.[1] (Dkt. No. 19). Plaintiff was provided notice of the motion deadlines but has not responded in opposition to the motion.[2] (Dkt. No. 21). For the following reasons, this court will recommend granting defendants' motion in part and denying the motion in part.

## DISCUSSION

### I.  Facts and Contentions[3]

Plaintiff is a former inmate who was released from the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") in July 2016. (Compl. at 5). At all times relevant to the complaint, plaintiff was housed at Great Meadow Correctional Facility ("Great Meadow"). (Compl. at 6). Plaintiff

---

[1] Defendants have moved to dismiss all claims except for plaintiff's First Amendment claim that defendant Jones issued a false misbehavior report in retaliation for plaintiff's previous grievances and lawsuits, and the Eighth Amendment sexual assault claims against defendants Alger, Garrido, and Underwood. (Dkt. No. 19-1, at 3).

[2] This court is noting plaintiff's lack of response only for procedural background. A plaintiff's failure to respond to a motion to dismiss does not automatically warrant dismissal of the complaint because a motion to dismiss is addressed to the face of the complaint. *Taylor v. New York Life Ins. and Annuity Corp.*, No. 16-CV-6121, 2773699, at *3 (S.D.N.Y. June 26, 2017) (citing *McCall v. Pataki*, 232 F.3d 321, 323 (2d Cir. 2000)). If the complaint is sufficient on its face to state a claim upon which relief may be granted, the plaintiff's failure to respond to a motion pursuant to Fed. R. Civ. P. 12(b)(6) does not warrant dismissal. *McCall*, 232 F.3d at 323. *See also Maggette v. Dalsheim*, 709 F.2d 800, 802 (2d Cir.1983) ("Where . . . the pleadings are themselves sufficient to withstand dismissal, a failure to respond to a 12(c) motion cannot constitute a 'default' justifying dismissal of the complaint.") The same is true for motions to dismiss under Fed. R. Civ. P. 12(b)(1). *Suvak v. United States*, No. 12 Civ. 6004, 2013 WL 2217171, at *2 (S.D.N.Y. May 21, 2013) (citing *Gray v. Metropolitan Detention Center*, No. 09-CV-4520, 2011 WL 2847430, at *2 n. 3 (E.D.N.Y. July 15, 2011) (noting that plaintiff's failure to respond to motion to dismiss under Rule 12(b)(1) does not automatically warrant dismissal of complaint and considering merits of motion)).

[3] This court is assuming the truth of the facts as stated in the complaint only for purposes of this motion.

commenced this litigation after he was released from Great Meadow. (Compl. at 5).

Plaintiff was incarcerated for over fifteen years at Great Meadow and other DOCCS facilities. (*Id*.)  During that time, he had filed a number of grievances and lawsuits against correctional officers, some of which settled in plaintiff's favor. (Compl. at 4-5).  While at Great Meadow, plaintiff began working in the law library, and had assisted other inmates with grievances and litigation against correctional officers. (Compl. at 9).  In his complaint, plaintiff alleges that this conduct made him a target for retaliation by the "White Knights," which plaintiff described as "a white supremacist organization of correctional officers at Great Meadow . . . ." (Compl. at 9, n. 1).

Plaintiff identifies three distinct claims in his complaint, with separate facts supporting each claim.  In order to better understand the complaint and the facts surrounding plaintiff's claims, the court will discuss plaintiff's allegations as he set them forth in the complaint.

**A.    Claim No. 1: Defendant Douglas Jones wrote a false misbehavior report against plaintiff, and defendant Robert McCauley removed plaintiff from his Law Library job in retaliation for grievances that plaintiff wrote, in violation of the First and Fourteenth Amendments of the United States Constitution.**

Plaintiff describes mistreatment at Great Meadow dating back to April of 2013. (Compl. at 6).  He states that on April 22, 2013, he filed a grievance, complaining that newspapers from his subscription were being "illegally confiscated." (*Id.*)  It appears from the "Deadlock Recommendation," filed as an exhibit to plaintiff's complaint that

he had accused an "Officer Harrington" of interfering with his newspapers.[4] (Dkt. No. 1-2, at 75-76).  Plaintiff states that on June 6, 2013, Corrections Officer ("CO") Gillie, who is not a defendant in this action, approached plaintiff to tell him that he did not "like the fact" that plaintiff wrote grievances. (Compl. at 6).  Plaintiff claims that CO Gillie then threatened to have plaintiff fired from his Law Library position. (*Id.*) Plaintiff filed a grievance involving these allegations. (*Id.*) This grievance also accused CO Gillie of filing a false misbehavior report against plaintiff. (Dkt. No. 1-2 at 66, 68-72).

Plaintiff alleges that on June 13, 2013, he was informed by Chaplain E. Payne that the facility had denied plaintiff a "death visit" after his uncle died on June 8, 2013. (Compl. at 6).  Plaintiff claims that his application was not "properly reviewed," because, according to plaintiff, the denial was issued prior to the facility receiving the confirmation of plaintiff's relationship with the decedent. (Compl. at 7).

On June 27, 2013, plaintiff alleges that defendant Jones told plaintiff that the "death visit" was denied because of the plaintiff's law suits. (*Id.*)  Plaintiff claims that defendant Jones was "upset" with plaintiff because plaintiff had "questioned" Jones about stealing plaintiff's newspapers. (*Id.*)  Plaintiff also alleges that on June 26, 2013, defendant Jones had threatened to plant a weapon in plaintiff's cell in retaliation for

---

[4] Plaintiff has not included all the grievance documents relative to the grievances that he cites. This court is citing to the documents included in plaintiff's exhibits that relate to the grievance in question, not necessarily the entire grievance.  Some of plaintiff's exhibits are merely appeal decisions or notifications regarding the grievance that was filed.  Exhaustion is not an issue at this stage of the proceeding, so the lack of a full set of grievance documents does not impact the consideration of defendants' motion.

"his previous lawsuits." (*Id.*)  Plaintiff filed grievances regarding these issues with defendant Jones. (Compl. at 7) (Dkt. No. 1-2 at 55-56, 63-64)

Plaintiff states that on July 11, 2013, defendant Jones and another corrections officer assaulted and injured another inmate. (Compl. at 7).  The other inmate was exonerated of all charges against him and released from the Special Housing Unit ("SHU"). (*Id.*)  Plaintiff claims that he testified on this inmate's behalf, asserting that the inmate was not at fault and was assaulted by the officers. (Compl. at 8).

Plaintiff claims that on September 14, 2013, he was denied "religious activities" and "food" for the evening by defendant Jones. (*Id.*)  Plaintiff states that he was a "fasting Muslim," and that defendant Jones denied plaintiff participation in "shawwal" activities. (*Id.*)  Plaintiff claims that defendant Jones told plaintiff that he was retaliating against plaintiff because of an earlier grievance accusing defendant Jones of stealing plaintiff's newspapers.[5] (*Id.*)  Plaintiff claims that defendant Jones asked plaintiff how "Ramadan" was, referring to the fact that Jones caused plaintiff to miss "shawwal."  Plaintiff also claims that defendant Jones threatened to have plaintiff fired from his Law Library job. (*Id.*)  Plaintiff filed a grievance regarding this incident. (Dkt. No. 1-2 at 36-41).

On September 17, 2013, plaintiff claims that CO Laura Miller (not a defendant in this action) questioned plaintiff about a grievance that he had filed, and also threatened him with removal from his Law Library job. (Compl. at 8).  Plaintiff claims that CO

---

[5] It is unclear from the complaint if this is the same grievance that accused Officer Harrington of interfering with plaintiff's newspapers, or a separate grievance. (Dkt. No. 1-2, at 75-76).

Miller prevented plaintiff from going to work at that time "in an attempt to make him lose his job." (*Id.*)  Plaintiff filed a grievance regarding this alleged conduct. (Dkt. No. 1-2 at 24-25).  Plaintiff filed another grievance after a September 25, 2013 incident involving CO Heather Roberts (not a defendant in this action) in which plaintiff claims he was denied access to the law library "in retaliation" for his grievance writing. (Compl. at 8-9) (Dkt. No. 1-1 at 15-19, 26-27).

Plaintiff claims that CO Miller "retaliated" against plaintiff on October 7, 2013, by taking his identification card, threatening to have plaintiff removed from his Law Library job, and have him keeplocked. (Compl. at 9).  Plaintiff filed another grievance. (Dkt. No. 1-2 at 2, 10-13).  Plaintiff alleges that on October 17, 2013, defendant Jones and Steven Celeste (not a defendant herein) prevented plaintiff from attending his Law Library job in an effort to have plaintiff fired from his position, in retaliation for his grievances. (Compl. at 9).  Plaintiff states that defendant Jones named every corrections officer against whom plaintiff had filed a grievance and told plaintiff that the White Knights were "working" to have plaintiff "removed from his employment at the Law Library" because plaintiff had helped inmates file civil rights law suits. (*Id.*)

Plaintiff claims that, while he was on the way to the law library on November 5, 2013, defendant CO Alger and other corrections officers threatened plaintiff with "physical harm and adverse action" if plaintiff "did not stop writing grievances against the White Knights organization." (Compl. at 10).  Plaintiff states that on November 6, 2013, he was notified that he was going to be moved to another cell, and as he was going to retrieve his mattress, he was approached by defendant Jones and CO Nitche

(not a defendant in this action). CO Nitsche asked plaintiff how he liked the "cell move," and defendant Jones stated "'you missed your uncle's funeral, now a cell move. There's more than one way to skin a grievance writing cat.'" (*Id.*) Plaintiff commented to the officers that they would not leave him alone, and plaintiff claims that the officers moved toward him in an "aggressive manner in what seemed like an attempt to physically assault plaintiff," but another unidentified correctional officer intervened to stop the attack. (*Id.*) Plaintiff also claims that, on November 7, 2013, defendant Alger told other corrections officers to attack plaintiff when they got the opportunity. (Compl. at 11).

Plaintiff alleges that on November 16, 2013, he wrote another grievance against defendant Jones, and on November 21, 2013, plaintiff's cell was "maliciously searched" by defendant Jones and CO Weeks (not a defendant herein). (Compl. at 11-12) Plaintiff claims that defendant Jones further retaliated against plaintiff by confiscating "irreplaceable" legal documents and confiscated grievances that plaintiff had written against him. Defendant Jones also took plaintiff's Qur'an and cigarette tobacco. (*Id.*) Plaintiff claims that defendant Jones took these actions to "harass" and retaliate against plaintiff for his grievances. (Compl. at 12).

Plaintiff claims that on November 22, 2013, defendant Jones wrote a false misbehavior report, charging plaintiff with threatening defendant Jones in the hallway. (*Id.*) Plaintiff alleges that the false misbehavior report was in retaliation for all of the above grievances and actions against defendant Jones and others. (*Id.*) Plaintiff alleges that witnesses who were present could attest that plaintiff did not threaten defendant

7

Jones.  Plaintiff claims that while handcuffing plaintiff for "keeplock" status, defendant

Jones told plaintiff that he was "tired of all [his] grievance writing bullshit." (*Id.*)

Plaintiff claims that the false misbehavior report resulted in plaintiff's removal from his

Law Library position. (Compl. at 13).

    Although plaintiff's first cause of action recited all the facts above, he concluded

his claim by only seeking monetary damages for the false misbehavior report by

defendant Jones and plaintiff's removal from his Law Library job by defendant

McCauley. (Compl. at 13, ¶ A).

> **B.    Claim No. 2: Plaintiff states that his second cause of action is against defendants Winchell and Smith for strip frisking plaintiff without justification and having him undergo urinalysis "under the pretext of suspicion" and without security justification, purely for retaliatory and harassment purposes in violation of the First, Fourth, Eighth, and Fourteenth Amendments.**

    The following facts are relevant to plaintiff's second cause of action.  Plaintiff

claims that on December 11, 2013, at approximately 7:15 a.m., defendant CO Timothy

Smith and another unidentified correctional officer came into plaintiff's cell, took him

outside the cell and strip frisked him for "no legitimate purpose." (Compl. at 15).

Plaintiff claims that defendant Smith "only did this . . . because [plaintiff] had written a

grievance against defendant Jones for the false misbehavior report. (*Id.*)  Apparently,

the grievance in question also mentioned defendant Smith's "attempt to assault"

plaintiff. (Id.)  While defendant Smith was strip frisking plaintiff, Smith told plaintiff

that his "writing has pissed people off." (*Id.*)

    Plaintiff claims that the officers then "illegally" confiscated plaintiff's legal mail

and escorted him to the auditorium at Great Meadow for urinalysis testing. (*Id*.)

Plaintiff claims that the officer who performed the test also told plaintiff that his

"writing" was making people "upset." (Compl. at 16).  Plaintiff claims that, although he

was told that defendant Winchell had ordered that plaintiff being drug tested for

"suspicion," there was no legitimate security reason for the test, because he had never

tested positive for drugs while incarcerated. (*Id*.)  Plaintiff further alleges that he

experienced humiliation during the strip frisk and urinalysis test "at the hands of Lt.

Winchell, and C.O. Timothy Smith" because plaintiff was forced to expose his genitals.

(*Id*.)

> **C.**      **Claim No. 3: Plaintiff's third cause of action is against defendants
> Alger, Foster, Garrido, and Underwood for sexually assaulting
> plaintiff on multiple occasions in retaliation for grievances of prior
> sexual assaults in violation of the First and Eighth Amendments.**

Plaintiff alleges that on November 20, 2013 and January 17, 2014, defendant

Alger sexually assaulted plaintiff by placing his finger in plaintiff's rectum in a "very

harsh manner." (Compl. at 17-18).  Plaintiff cites another instance of the same type of

sexual assault on January 23, 2014, during which defendant Alger ordered defendants

Garrido and Underwood to engage in the same conduct. (Compl. at 19).  Plaintiff

claims that defendants Underwood and Garrido "took turns" placing their "hands" in

plaintiff's rectum, while making derogatory comments. (*Id.*)

Plaintiff alleges that on February 8, 2014, he cleared the metal detector without

incident, but he was still ordered to stand up against the wall for a pat frisk by

defendant Foster. (*Id.*)  Plaintiff states that he complied, but that defendant Foster began

grabbing plaintiff's buttocks and telling plaintiff that he did not care how many sexual assault complaints he wrote, he would still "'get it in the ass" every time he passed through the metal detector. (*Id.*)  Other, unidentified correctional officers were present during this incident. (*Id*.)

## II.    <u>Motion to Dismiss</u>[6]

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice.  *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555).  Plaintiff's factual allegations must also be sufficient to give the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp.*, 550 U.S. at 555 (citation omitted).

When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted);

---

[6] Defendants have also moved to dismiss based on a lack of jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).  The Rule 12(b)(1) motion is applicable only to the defendants' argument that the Eleventh Amendment bars relief against the defendants in their official capacities.  The analysis applicable to a motion to dismiss for lack of subject matter jurisdiction is slightly different than that applicable to Rule 12(b)(6).  In a motion to dismiss for lack of subject matter jurisdiction, the court is not bound by the face of the pleadings and may resolve disputed factual issues by reference to evidence outside the pleadings.  *JTE Enterprises, Inc. v. Cuomo*, 2 F. Supp. 3d 333, 338-39 (E.D.N.Y. 2014).  However, courts in this circuit often prefer to use the Rule 12(b)(6) standard for resolving sovereign immunity issues. *Id.*  Even under the stricter standard, plaintiff's official capacity claims may be dismissed.

*Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 71 (2d Cir. 1995). The court must heed its particular obligation to treat pro se pleadings with liberality. *Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir. 2005); *Tapia-Ortiz v. Doe*, 171 F.3d 150, 152 (2d Cir. 1999) (*per curiam*).

In deciding a motion to dismiss, the court may review documents integral to the complaint upon which the plaintiff relied in drafting his pleadings, as well as any documents attached to the complaint as exhibits and any statements or documents incorporated into the complaint by reference. *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d at 72 (the court may take into consideration documents referenced in or attached to the complaint in deciding a motion to dismiss, without converting the proceeding to one for summary judgment). Finally, the court may consider matters of which judicial notice may be taken, such as public filings and administrative decisions. *See Kavowras v. New York Times, Co.*, 328 F.3d 50, 57 (2d Cir. 2003) (citing *inter alia County Vanlines, Inc. v. Experian Info. Solutions, Inc.*, 205 F.R.D. 148, 154 (S.D.N.Y. 2002) (taking judicial notice of NLRB decisions)). *See also Combier-Kapel v. Biegelson*, 242 F. App'x 714, 715 (2d Cir. 2007) (taking judicial notice of the Impartial Hearing Officer's decision as well as certain other documents in the administrative record of an IDEA case); *In re Howard's Exp., Inc.*, 151 F. App'x 46, 48 (2d Cir. 2005) (taking judicial notice of Bankruptcy Court docket); *Caro v. Fidelity Brokerage Services, LLC*, No. 3:12-CV-1066, 2013 WL 3299708, at *6 (D. Conn. July 26, 2013) (taking judicial notice of record in prior litigation between the same parties); *Farid v. Bouey*, 554 F. Supp. 2d

301, 313-14 (N.D.N.Y. 2008) (taking judicial notice of documents relating to plaintiff's prior Article 78 proceeding in state court).

## III.   Official Capacity Claims/Eleventh Amendment

### A.   Legal Standard

The state itself cannot be sued under section 1983. *Komlosi v. New York State OMRDD*, 64 F.3d 810, 815 (2d Cir. 1995) (citing *Will v. Michigan Department of Police*, 491 U.S. 58, 71 (1989)).  This is true whether the court is considering Eleventh Amendment immunity or a statutory interpretation of section 1983. *Id.* at 815 n.3.  An action against state officers in their official capacities is tantamount to an action against the state, and is therefore barred. *Yorktown Medical Laboratory, Inc. v. Perales*, 948 F.2d 84, 87 & n.1 (2d Cir. 1991) (citations omitted).  Monetary damages may not be recovered from state officers sued in their official capacities. *JTE Enterprises, Inc*., 2 F. Supp. 3d at 340 (citing *Will*, 491 U.S. at 71).  Prospective injunctive relief is available against individuals in their official capacities in order to correct an ongoing violation of federal law. *Id.* (citing *inter alia Edelman v. Jordan*, 415 U.S. 651, 663 (1974)).

### B.   Application

Plaintiff commenced this proceeding against all defendants "in their individual and official capacities." (Compl. at 1).  To the extent that plaintiff is attempting to sue defendants for monetary damages in their official capacities, or to the extent that his complaint can be interpreted as raising such official capacity claims, he is barred by the Eleventh Amendment from doing so.  Plaintiff did not seek injunctive relief, and in any

event, because he has been released from incarceration, any injunctive relief would have been moot. *See Green v. Harris*, No. 6:15-CV-6554, 2017 WL 2364410, at *2 (W.D.N.Y. May 31, 2017) (citing *Pugh v. Goord*, 571 F. Supp. 2d 477, 490 (S.D.N.Y. 2008) (finding that a plaintiff's claims for injunctive relief against prison officials was moot in light of plaintiff's release from prison)).  Therefore, this court recommends that plaintiff's "official capacity" claims be dismissed with prejudice as to all defendants.

## IV.   **Statute of Limitations**

### A.   **Legal Standards**

Federal courts borrow the state law personal injury statute of limitations period for purposes of filing section 1983 actions. *Wilson v. Garcia*, 471 U.S. 261, 276 (1985).  In New York State, the relevant limitations period is three years. *Owens v. Okure*, 488 U.S. 235, 250–51 (1989).  *See* N.Y. Civ. Prac. L & R. § 214(5).  Thus, unless the limitations period is tolled for some reason, a plaintiff must file his section 1983 civil rights action within three years of the accrual of each cause of action. Federal law governs the question of when a section 1983 claim accrues. *Covington v. City of New York*, 171 F.3d 117, 121 (2d. Cir. 1999) (citing *Morse v. University of Vermont*, 973 F.2d 122, 125 (2d. Cir. 1992)).  Generally, under federal law, a cause of action accrues when "the plaintiff knows or has reason to know of the injury which is the basis of his action." *Id.*  (quoting *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980) (internal quotation marks omitted)).  Although federal law determines when a section 1983 claim accrues, state tolling rules determine whether the limitations period has been tolled. *Abbas v. Dixon*, 480 F.3d 636, 641 (2d Cir. 1997).

A single violation with continuing "consequences" does not extend the accrual of the statute of limitations. *See Ruane v. County of Suffolk*, 923 F. Supp. 2d 454, 460 (E.D.N.Y. 2013) (distinguishing a due process case in which the constitutional injury included the failure to provide a hearing allowing the plaintiff to challenge the continued retention of his vehicle with a case where the claim was based on one unconstitutional hearing with continuing consequences); *Shannon v. Recording Industry Ass'n of Amer.*, 661 F. Supp. 205, 210 (S.D. Ohio 1987) (single violation with continuing consequences is insufficient to extend the accrual past the original act); *Doe v. Blake*, 809 F. Supp. 1020, 1025 (D. Conn. 1992) (a "continuing violation" which would change the accrual date is occasioned by continuing unlawful acts, not by continued ill effects from the original violation).

In "rare and exceptional" cases, the doctrine of equitable tolling may apply to defeat an argument that the action was not timely filed. *Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir. 2007). *See also Veltri v. Bldg. Serv. 32B-J Pension Fund*, 393 F.3d 318, 322 (2d Cir. 2004) ("Equitable tolling is an extraordinary measure that applies only when plaintiff is prevented from filing despite exercising that level of diligence which could reasonably be expected in the circumstances."). Equitable tolling allows the court to extend the statute of limitations past the time of expiration as necessary to avoid inequitable circumstances. *Johnson v. Nyack Hospital*, 86 F.3d 8, 12 (2d Cir. 1996) (citation omitted). In order to apply equitable tolling, the court must find that "extraordinary circumstances" prevented the plaintiff from performing the required act, and that plaintiff acted "with reasonable diligence" during the period that he seeks to

toll. *Walker v. Jastremski*, 430 F.3d 560, 564 (2d Cir. 2005) (quoting *Doe v. Menefee*, 391 F.3d 159 (2d Cir. 2004)).

### B.    Application

Plaintiff filed this action on October 27, 2016.[7] (Dkt. No. 1).  Thus, absent equitable tolling, any claim which accrued prior to October 27, 2013 would be time-barred.  Defendants argue that "several of Plaintiff's purported claims against defendant Jones are time-barred." (Def. Br. at 4).  Defendants cite as time-barred the June 26, 2013 "threat" to place a weapon in plaintiff's cell; the June 27, 2013 denial of a funeral visit; the September 14, 2013 denial of "religious activities" and food; and the October 17, 2013 failure to allow plaintiff to attend his Law Library job. (*Id.*)

It is true that the incidents listed above occurred outside of the statute of limitations and would be time-barred as stand-alone claims.  Plaintiff has not responded to allege that these incidents amount to a "continuing violation," nor would such an argument be successful because they are separate violations.  In addition, plaintiff has not raised any equitable tolling arguments.  *See Abbas*, 480 F. 3d at 642 (plaintiff bears the burden of showing that he is entitled to equitable tolling).  Therefore, to the extent that plaintiff is seeking § 1983 relief for these incidents, all such claims should be dismissed.

However, it does not appear that plaintiff is raising the above incidents as part of

---

[7] In *Dory v. Ryan*, 999 F.2d 679, 682 (2d Cir. 1993), the Second Circuit discussed the prison-mailbox rule, in which the court deems a pro se prisoner's complaint filed on the date that the prisoner delivered the complaint to prison officials for transmittal to the court.  However, in this case, plaintiff was released from prison on July 14, 2016, and thus, was not entitled to take advantage of the prison "mailbox" rule.

his claim.  Reading the complaint in its entirety, plaintiff has been very specific about the claims that he believes entitle him to monetary relief.  Plaintiff's first claim is that defendant Jones wrote a false misbehavior report against plaintiff, and defendants Jones and McCauley removed plaintiff from his Law Library job, all in retaliation for the many grievances that plaintiff wrote, particularly against defendant Jones.  Defendant Jones allegedly wrote the misbehavior report on November 22, 2013, within the statute of limitations.  None of the other incidents are mentioned in the paragraph entitled "Claim # 1." (Compl. at 5).  In addition, at the end of the factual recitation which includes a description of the incidents that defendants claim are barred by the statute of limitations, plaintiff wrote that the "constitutional basis for "this claim" is that defendant Douglas wrote a false misbehavior report and defendant McCauley removed plaintiff from his Law Library job in retaliation for grievances. (Compl. at 13).  None of the time-barred incidents are mentioned.

Based upon the entirety of the complaint, this court has interpreted plaintiff's recitation of the time-barred incidents as an attempt to show the defendants' alleged motivation for their later conduct toward plaintiff.  Plaintiff is alleging retaliation for past grievances, thus, descriptions of those past grievances, together with the alleged actions that caused plaintiff to file grievances, although not actionable in themselves, may be relevant later to establish a motive to retaliate. *See Fitzgerald v. Henderson*, 251 F.3d 345, 365 (2d Cir. 2001) (the statute of limitations does not operate to bar the introduction of evidence that predates the limitations period, but is relevant to events during the period) (citations omitted).

Thus, to the extent that plaintiff is attempting to raise the June 26, 2013 "threat" to place a weapon in plaintiff's cell; the June 27, 2013 denial of a funeral visit; the September 14, 2013 denial of "religious activities" and food; and the October 17, 2013 failure to allow plaintiff to attend his Law Library job as separate constitutional claims, they should be dismissed as time-barred.[8]  To the extent that plaintiff is attempting to use the description of these time-barred incidents as a basis for supporting his timely retaliation claims,"dismissal" is unnecessary.  *See Stephens v. Venettozzi*, No. 13-CV-5779, 2016 WL 929268, at *1-2 n.3 (S.D.N.Y. Feb. 24, 2016) (plaintiff described incidents occurring outside of the three-year limitations period in order to show a pattern of retaliation and was not asserting those incidents as separate retaliation claims) (citing *Fitzgerald, supra*).

## V.    Dismissal for Failure to State a Claim

While the details vary, plaintiff alleges that all defendants engaged in retaliation and verbal harassment of plaintiff.  Because the same legal standards apply, I will summarize the general analysis for these type of claims at the outset.  I will then address the specific claims against each defendant.

### A.    Legal Standards

#### 1.    Retaliation

In order to establish a claim of retaliation for the exercise of a constitutional right, plaintiff must show first, that he engaged in constitutionally protected conduct,

---

[8] At least some of these incidents would also fail to raise a constitutional issue.  *See, e.g. Roman v. Donelli*, 616 F. Supp.2d 299, 302 (N.D.N.Y. 2007) (dismissing inmate's claim that he was prevented from attending wife's funeral).

and second, that the conduct was a substantial motivating factor for "adverse action" taken against him by defendant. *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003). The Second Circuit has defined "adverse action" in the prison context as "retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights.'" *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004) (citations omitted). The plaintiff must establish a causal connection between the protected conduct or speech and the adverse action. *Id.* at 380. The court must keep in mind that claims of retaliation are "easily fabricated" and "pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration." *Bennett*, 343 F.3d at 137 (citation omitted). Accordingly, plaintiff must set forth non-conclusory allegations to sustain a retaliation claim. *Bennett*, 343 F.3d at 137. Participation in the grievance process by an inmate is clearly protected conduct in the context of a retaliation claim. *Roseboro v. Gillespie*, 791 F. Supp. 2d 353, 367 & n. 21 (S.D.N.Y. 2011) (collecting cases).

### 2.    Verbal Harassment

It is well established in the Second Circuit that verbal abuse, whether threatening, vulgar, or racial in nature, does not, by itself, rise to the level of a constitutional violation. *See, e.g.*, *Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986); *Webster v. Holmes*, 694 F. Supp. 2d 163, 187 (N.D.N.Y. 2010) (collecting cases); *Ramirez v. Holmes*, 921 F. Supp. 204, 210 (S.D.N.Y. 1996). Such harassment, "'unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem,' does not constitute the violation of any federally protected

right and, therefore, is not actionable under . . . § 1983." *Shabazz v. Pico*, 994 F. Supp. 460, 474 (S.D.N.Y. 1998); *see also Purcell*, 790 F.2d at 265 (a guard calling a plaintiff names did not establish any "appreciable injury" and dismissal of the claim was proper).

### B.    Application

#### 1.    Defendant Jones

Plaintiff alleges several incidents of mistreatment by defendant Jones that occurred between November 6, 2013 and November 22, 2013.  As with the time-barred claims addressed above, plaintiff appears to have included several of these incidents in his complaint only as background to demonstrate defendants' retaliatory motives. However, because the court must read the complaint to raise the strongest arguments that they suggest, I will also consider whether any of these incidents raise stand-alone federal claims.

First, plaintiff contends that defendant Jones moved him to a new cell on November 6, 2013, in retaliation for his prior grievances. (Compl. at 10).  Plaintiff does not allege that his new cell was unsafe or unsanitary, or that he suffered any injury or adverse consequences as a result of the move. *See Carr v. Canty,* No. 10-Civ-3829 (JPO), 2012 WL 3578742, at *3 (S.D.N.Y. 2012) (plaintiff's complaints about minor problems with new cell did not state a conditions of confinement claim).  Therefore, to the extent that plaintiff is claiming that this alleged retaliatory cell move violated his constitutional rights, that claim should be dismissed.

Plaintiff next alleges that, shortly after his relocation to another unit, defendant

Jones gave the White Knights credit for the cell move, mocked plaintiff, and moved "in a very aggressive manner in what seemed like an attempt to physically attack" plaintiff. (Compl. at 10). These allegations of verbal harassment or threatening behavior that did not result in physical harm do not give rise to a federal claim, and should also be dismissed.

Plaintiff further alleges that defendant Jones searched his cell without cause on November 21, 2013 and improperly confiscated legal research documents[9], a copy of the Qur'an, and tobacco. (Compl. at 11-12). The Fourth Amendment does not prohibit unreasonable searches of a prison cell. *See Hudson v. Palmer*, 468 U.S. 517, 525 (1984). In addition, the unauthorized intentional deprivation of an inmate's property cannot form the basis for constitutional claims if sufficient post-deprivation remedies are available to address the claim. *Id.*, 468 U.S. at 531. New York provides such a remedy in the form of a state Court of Claims action. *Jackson v. Burke*, 256 F.3d 93, 96 (2d Cir. 2001).

Plaintiff alleges that the cell search and confiscation of his property were done in retaliation for prior grievances against defendant Jones. It is well settled that retaliatory cell searches are not actionable under § 1983. *See Walker v. LaValley*, No. 9:12-CV-807 (TJM/CFH), 2014 WL 4744735, at *14 (N.D.N.Y. Sept. 23, 2014) (collecting cases). However, the allegation that defendant Jones confiscated plaintiff's personal

---

[9] Plaintiff described these legal documents as research on the dietary effects of soy bean products, which could have been used in a potential future lawsuit against DOCCS. (Compl. at 11). Plaintiff has not alleged that the unavailability of these materials impeded a non-frivolous legal claim. *Lewis v. Casey*, 518 U.S. 343, 351 (1996). Therefore, this court will treat his claim as one for confiscation of personal property, and not one alleging a lack of access to the courts.

property in retaliation for the exercise of his First Amendment grievance rights is sufficient to withstand a motion to dismiss. *Toliver v. City of New York,* No. 10-CIV-5806, 2013 WL 6476791, at *7 (S.D.N.Y. Dec. 10, 2013) (the confiscation or destruction of property may give rise to a retaliation claim); *Smith v. City of New York*, No. 03 Civ. 7676, 2005 WL 1026551, at *3 (S.D.N.Y. May 3, 2005) ("retaliatory destruction of a prisoner's personal property has previously been found substantial enough to qualify as an adverse action").  In addition to the earlier grievances filed against the White Knights, plaintiff also alleges that he had filed a grievance against defendant Jones "less than a week" prior to the seizure of his property. (Compl. at 11).  Therefore, at this point in the proceedings, plaintiff has alleged a plausible retaliation claim against defendant Jones, with regard to the November 21, 2017 confiscation of his property.

On November 22, 2013, defendant Jones issued a misbehavior report.  Plaintiff contends that the report falsely charged him with threatening or violent behavior.  (Compl. 12-13).  To the extent that plaintiff's claim is based on the validity of the misbehavior report, it should be dismissed.[10]  A prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest, as long as the prisoner is provided with procedural due process. *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986).  Plaintiff was found guilty of the charges in the misbehavior report after a

---

[10] Plaintiff also raised a retaliation claim against defendant Jones stemming from the November 22, 2013 misbehavior report.  It is not part of this motion to dismiss.

disciplinary hearing and sentenced to thirty days keeplock confinement, but has not raised any due process concerns about the hearing in his complaint.

### 2.    Defendant McCauley

Plaintiff alleges that the "White Knights," and defendant Jones in particular, had been working for some time to have plaintiff removed from his job at the prison law library. (Compl. at 9).  As described in the Complaint, defendant McCauley, who served as the law library supervisor, ultimately terminated plaintiff's position for "disciplinary reasons" after plaintiff was found guilty of the charges in the November 22, 2013 misbehavior report authored by defendant Jones. (Compl. at 13).  Plaintiff contends that defendant McCauley actually terminated him because of the grievances that he had filed against the White Knights, and the resulting pressure from the group.

Plaintiff thus contends that defendant McCauley's retaliatory termination violated his rights under the First and Fourteenth Amendments. (Compl. at 13).  This court will address his Fourteenth Amendment due process claim first.  In order to state a due process claim, a plaintiff must allege that he possessed a liberty interest protected by the Constitution and that he was deprived of that interest without being afforded constitutionally adequate process.  *See Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001).  It is well-established that plaintiff had no liberty interest in his job at the law library.  *See Frazier v. Coughlin*, 81 F.3d 313, 318 (2d Cir. 1996) ("no protected liberty interest in a particular job assignment"); *Waters v. Prack*, No. 9:13-CV-1437(LEK/DEP), 2017 WL 1239642, at *6 (N.D.N.Y. Feb. 24, 2017) (inmate was not deprived of a cognizable liberty or property interest when he lost the opportunity to

serve as a law library clerk). Therefore, this court recommends that the due process claim against defendant McCauley be dismissed.

Although not a cognizable liberty interest, plaintiff's termination from his job at the law library likely constitutes an adverse action. However, plaintiff's First Amendment retaliation claim against defendant McCauley should still be dismissed because plaintiff has failed to allege any causal connection between his grievances against other correctional officers and his termination from the law library. In order to show causation, plaintiff must allege that his grievance was a "substantial or motivating factor" for his termination. Plaintiff has not alleged that he had ever filed any grievance against defendant McCauley. The only basis for his retaliation claim is his unsupported conclusion that defendant McCauley terminated plaintiff "due to his instructions from the [W]hite [K]nights." (Compl. at 13). This allegation is wholly conclusory, as plaintiff has not identified any facts that would suggest a retaliatory motive for defendant McCauley's actions.

"As a general matter, it is difficult to establish one defendant's retaliation for complaints against another defendant." *See, e.g., Hare v. Hayden*, 09 Civ. 3135, 2011 WL 1453789, at *4 (S.D.N.Y. Apr. 14, 2011) (citing *Wright v. Goord*, 554 F.3d 255, 274 (2d Cir. 2009)) (dismissing retaliation claim against a corrections officer when only alleged basis for retaliation was complaint about an incident involving another corrections officer); *Roseboro v. Gillespie*, 791 F.Supp.2d at 369 (plaintiff has failed to provide any basis to believe that a corrections counselor would retaliate for a grievance that she was not personally named in). Plaintiff's speculative allegations that defendant

McCauley was acting on behalf of the White Knights do not state a viable retaliation claim. Because plaintiff has failed to allege any plausible nexus between his termination from the law library by defendant McCauley and his prior grievances against other correctional officers, this court recommends that the retaliation claim against defendant McCauley be dismissed.

### 3.    Defendant Winchell

Plaintiff contends that defendant Winchell ordered that plaintiff be subjected to a urinalysis test on December 11, 2013, in a violation of his Fourth Amendment right to bodily privacy, his Eighth Amendment right to avoid cruel and unusual punishment, and his Fourteenth Amendment due process rights. (Compl. at 15). Plaintiff also contends that the urinalysis was performed in retaliation for grievances that plaintiff had filed against correctional officers, in violation of his First Amendment rights. (*Id*.) This court recommends that all of the claims against defendant Winchell be dismissed.

Urinalysis testing constitutes a search subject to constitutional protection. *See Skinner v. Railway Labor Exec. Ass'n*, 489 U.S. 602, 614 (S.D.N.Y. 1997). However, in the prison context, urinalysis testing only rises to the level of a constitutional violation if it is conducted in a manner intended to harass or humiliate the inmate. *See Chaney v. Koupash*, No. 04-CV-136 (LEK/DRH), 2008 WL 5423419, at *12 (N.D.N.Y. Dec. 30, 2008) (collecting cases). In his complaint, plaintiff described a single urinalysis test that he found to be humiliating. Plaintiff also contends that the testing was unnecessary, because he was drug free and had never had any positive drug tests while incarcerated. (Compl. at 16). These allegations do not state a constitutional

claim. *See Chaney*, 2008 WL 5423419, at *13 (single drug test did not constitute harassment, regardless of negative test result); *Rodriguez v. Coughlin*, 795 F. Supp. 609, 612 (W.D.N.Y. 1992) (W.D.N.Y. 1992) (two urinalysis tests in twelve month period did not violate Eighth or Fourteenth Amendment).

Plaintiff's related claim, that the urinalysis test was conducted in retaliation for his numerous grievances against the White Knights, should also be dismissed. A single urinalysis test does not rise to the level of an adverse action that would deter an inmate from asserting his rights. *See Bumpus v. Canfield*, 495 F. Supp. 2d 316, 327 (W.D.N.Y. 2007) ("urine tests are a fact of prison life . . . , and I do not find that one urine test would chill a prisoner of ordinary firmness from filing grievances."). In addition, plaintiff has not alleged that he had ever filed a grievance against defendant Winchell, and offers only the alleged statement of an unidentified correctional officer that the test was conducted in retaliation for his grievance history. (Compl. at 15-16). Therefore, this court recommends that all claims against defendant Winchell be dismissed.

### 4. Defendant Smith

Plaintiff alleges that defendant Smith conducted a strip frisk that served no legitimate purpose except to humiliate plaintiff, in retaliation for a prior grievance. (Compl. at 15). During the strip frisk, defendant Smith allegedly told plaintiff that his writing had "pissed people off." (*Id.*). Plaintiff alleges that the "writing" was a previous grievance filed against defendant Jones, which had also implicated defendant Smith in an assault. (*Id.*). Plaintiff has not alleged any physical abuse or other mistreatment during the strip frisk.

Plaintiff's contention that the strip frisk, by itself, was unconstitutional should be dismissed because it fails to state a claim. Routine strip frisks of inmates, including body cavity inspections, do not violate the Fourth, Eighth, or Fourteenth Amendment. *See Castro-Sanchez v.New York State Dep't of Corr. Svcs.*, No. 10 Civ. 8314 (DLC), 2011 WL 6057837, at *8 (S.D.N.Y. Dec. 6, 2011) (strip search did not violate the Fourth Amendment); *Perez v. New York State Dep't of Corr. Svcs.*, No. 9:08-CV-1031, 2010 WL 1235637, at *8 (N.D.N.Y. March 7, 2010) (strip search did not violate plaintiff's due process rights); *Morrison v. Cortright,* 397 F. Supp. 2d 424, 425 (W.D.N.Y. 2005) (plaintiff failed to state an Eighth Amendment claim related to single strip frisk that did not result in physical injury).

As discussed above, dismissal of a retaliation claim is proper where plaintiff only provides conclusory allegations that a correctional officer was motivated by grievances did not involve him. However, in this case, plaintiff specifically alleges that defendant Smith told him during the strip frisk that "his writing has pissed people off." (Compl. at 15). Out of caution, this court thus recommends denial of defendant Smith's motion to dismiss the retaliation claim stemming from the strip frisk. *See Mateo v. Bristow*, No. 12 Civ. 5052, 2013 WL 3863865, at *5 (S.D.N.Y. July 16, 2013) (denying motion to dismiss and finding that a causal connection was sufficiently alleged when defendant officers specifically state that they are taking action because of "all those grievances against officers"); *see also Burroughs v. Petrone*. No. 9:15-CV-818 (DNH/ATB), 2016 WL 5376371, at *8 (N.D.N.Y. July 15, 2016) (denying motion to dismiss where plaintiff specifically alleged that the defendants told him that they were taking adverse

action because plaintiff had filed grievances). This recommendation does not preclude defendant Smith from making a properly supported motion for summary judgment on the retaliation claim.

### 5. Defendants Foster, Alger, Garrido, and Underwood

Plaintiff alleges that defendants Foster, Alger, Garrido, and Underwood participated in an organized effort by the White Knights to sexually assault plaintiff under the pre-text of pat-frisk searches, in retaliation for grievances that plaintiff had filed against various correctional officers. (Compl. at 17-20). He also alleges that these four defendants threatened and verbally harassed him during various encounters at Great Meadow, including during the pat-frisks. (*Id.*). All four defendants have moved to dismiss the verbal harassment claims. Only defendant Foster has moved to dismiss plaintiff's sexual assault claim, arguing that the allegation that he "grabbed plaintiff's buttocks" during a pat frisk failed to state a First or Eighth Amendment claim.

To the extent that plaintiff alleges that insults and disparaging comments made by defendants Foster, Alger, Garrido, and Underwood toward plaintiff during the pat-frisk violated his constitutional rights, this court recommends dismissal of those claims. As discussed above, verbal harassment, on its own, does not rise to the level of a constitutional violation.

However, this court recommends denial of defendant Foster's motion to dismiss plaintiff's First and Eighth Amendment claims of sexual assault. It is true that defendant Foster's alleged actions during his pat-frisk of plaintiff are less egregious than the allegations made against defendants Alger, Garrido, and Underwood. (Compl.

at 19).  An isolated episode of sexual harassment or inappropriate touching would not typically rise to the level of a constitutional violation.  *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997).  However, "severe or repetitive sexual abuse of an inmate by a prison officer can be "objectively, sufficiently serious" enough to constitute an Eighth Amendment violation.  *Boddie*, 105 F.3d at 861.  Although plaintiff only alleges one instance in which defendant Foster touched him inappropriately during a pat frisk, he also alleges that defendant Foster acted in coordination with other correctional officers, and told plaintiff that "every time [plaintiff] comes to the metal detector he'd get it in the ass." (Compl. at 19).  It is unclear from the complaint whether defendant Foster was present during prior assaults or could have otherwise intervened to protect plaintiff from other defendants.  Therefore, this court recommends that defendant Foster's motion to dismiss plaintiff's First and Eighth Amendment claims stemming from the pat-frisk be denied. This recommendation does not preclude defendant Foster from filing a motion for summary judgment with respect to these claims.

## VI.    **Opportunity to Amend**

### A.    **Legal Standard**

Generally, when the court dismisses a pro se complaint for failure to state a claim, the court should afford the plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile.  *See Ellis v. Wilkinson*, 81 F. Supp. 3d 229, 238-39 (E.D.N.Y. 2015) (considering whether to grant plaintiff leave to amend after finding that plaintiff failed to state a plausible claim under section 1983) (citing *Cuoco v. Moritsugo*, 222 F.3d 99, 112 (2d Cir. 2000) (leave

to amend should be denied where "better pleading will not cure" the defects in a plaintiff's complaint.").

## B.   Application

### 1.   Recommendation of Dismissal With Prejudice

As discussed above, plaintiff's "official capacity" claims cannot be corrected with better pleading in an amended complaint.  Likewise, this court concludes that amendment of the following claims would be futile, and recommends that they be be dismissed with prejudice: all claims against defendant Jones arising from the November 6, 2013 cell move; all verbal harassment claims against defendant Jones; the First and Fourteen Amendment claims against defendant Jones arising from his November 21, 2013 search of plaintiff's cell; the Fourth Amendment claim against defendant Jones arising from the November 21, 2013 confiscation of plaintiff's personal property; the Fourteenth Amendment claim against defendant Jones arising from the November 22, 2013 misbehavior report; all claims against defendant McCauley; all claims against defendant Winchell; the Fourth, Eighth, and Fourteenth Amendment claims against defendant Smith related to the December 21, 2013 strip frisk; and all verbal harassment claims against defendants Foster, Alger, Garrido, and Underwood.

### 2.   Recommendation of Dismissal Without Prejudice

The Second Circuit has encouraged caution when dismissing a pro se plaintiff's claims on statute of limitations grounds.  *See Rodriguez v. Griffin*, 672 F. App'x 106, 107 (2d Cir. 2016) (vacating *sua sponte* dismissal of pro se complaint that did not allow an opportunity for amendment to show equitable tolling).  Therefore, to the extent that

plaintiff intends to raise the June 26, 2013 "threat" to place a weapon in plaintiff's cell; the June 27, 2013 denial of a funeral visit; the September 14, 2013 denial of "religious activities" and food; and the October 17, 2013 failure to allow plaintiff to attend his Law Library job as separate constitutional claims against defendant Jones, this court recommends that those claims be dismissed without prejudice, to allow plaintiff an opportunity to demonstrate that equitable tolling applies to any of these claims. To the extent that plaintiff only included these incidents in order demonstrate defendants' retaliatory motives, no amendment is necessary.

## VII.  **Conclusion**

In order to provide clarity for the court and the parties, and in light of the variety of claims, the manner in which they are set forth in the complaint, and the partial nature of defendants' motion to dismiss, this court will conclude its report with a list of the surviving claims if the District Court adopts all of the recommendations set forth herein:

(1)    First Amendment claim against defendant Jones alleging that he confiscated plaintiff's personal property on November 21, 2013 in retaliation for grievances that he filed;

(2)    First Amendment claim against defendant Jones alleging that he filed a misbehavior report against plaintiff on November 22, 2013 in retaliation for grievances that he filed;

(3)    First Amendment claim against defendant Smith alleging that he performed a strip frisk of plaintiff on December 11, 2013 in retaliation for grievances that he filed;

(4)    First and Eighth Amendment claims against defendants Foster, Alger, Garrido,and Underwood, alleging that they sexually assaulted plaintiff on

multiple occasions in retaliation for grievances that he filed.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants' motion to dismiss (Dkt. No.19) be **DENIED AS TO DEFENDANT JONES, only as to the First Amendment retaliation claim arising from the November 21, 2013 confiscation of plaintiff's personal property;** and it is

**RECOMMENDED**, that defendants' motion to dismiss (Dkt. No. 19) be **DENIED AS TO DEFENDANT SMITH, only as to the First Amendment retaliation claim arising from the December 11, 2013 strip frisk of plaintiff**; and it is

**RECOMMENDED**, that defendants motion to dismiss (Dkt. No. 19) be **DENIED AS TO DEFENDANT FOSTER**, **only as to the First and Eighth Amendment claims arising from the February 8, 2014 pat-frisk of plaintiff**; and it is

**RECOMMENDED**, that defendants' motion to dismiss (Dkt. No. 19) be **GRANTED as to all claims against defendants in their official capacity;** and that all such official capacity claims be **DISMISSED WITH PREJUDICE**; and it is

**RECOMMENDED**, that defendants' motion to dismiss (Dkt. No. 19) be **GRANTED AS TO DEFENDANTS MCCAULEY AND WINCHELL,** and all claims against those defendants be **DISMISSED WITH PREJUDICE**; and it is

**RECOMMENDED**, that defendants' motion to dismiss (Dkt. No. 19) be

**GRANTED AS TO DEFENDANT SMITH, only as to the Eighth and Fourteenth Amendment claims arising from the December 21, 2013 strip frisk of plaintiff;** and these claims be **DISMISSED WITH PREJUDICE**; and it is

     **RECOMMENDED**, that defendants' motion to dismiss (Dkt. No. 19) be **GRANTED AS TO DEFENDANT JONES, as to all claims arising from the November 6, 2013 cell move; the First and Fourteenth Amendment claims arising from the November 21, 2013 search of plaintiff's cell, the Fourteenth Amendment claim arising from the November 21, 2013 confiscation of plaintiff's personal property, the Fourteenth Amendment claim arising from the November 21, 2013 misbehavior report, and all verbal harassment claims,** and all these claims be **DISMISSED WITH PREJUDICE**; and it is

     **RECOMMENDED**, that defendants' motion to dismiss (Dkt. No. 19) be **GRANTED as to those time-barred claims against DEFENDANTS JONES arising from the June 26, 2013 "threat" to place a weapon in plaintiff's cell; the June 27, 2013 denial of a funeral visit; the September 14, 2013 denial of "religious activities" and food; and the October 17, 2013 failure to allow plaintiff to attend his Law Library job,** and all such claims be **DISMISSED WITHOUT PREJUDICE** to plaintiff submitting a proposed amended complaint within 60 days of the District Court's order approving this Report-Recommendation. Plaintiff may amend or supplement **only these specific claims.** Any proposed amended complaint must completely supercede the original and **should include only the claims that remain in this action after the District Court's order regarding this report-recommendation,**

32

**in addition to any amended allegations that demonstrate that the time-barred claims are subject to equitable tolling.** Plaintiff should not repeat any of the other dismissed claims in the amended complaint.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.


Dated:      August 23, 2017

Hon. Andrew T. Baxter
U.S. Magistrate Judge